# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# SHREVEPORT DIVISION

| | |
|---|---|
| **WEYERHAEUSER CO.** | **CIVIL ACTION NO. 17-0856** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **PARDEE MINERALS, LLC, ET AL.** | **MAG. JUDGE MARK L. HORNSBY** |

## RULING

Pending before the Court is a Motion for Judgment on the Pleadings to Dismiss Crossclaims of EP Energy E & P Company, L.P. ("EP") [Doc. No. 64] filed by Defendants in crossclaim Pardee Minerals, LLC ("Pardee") and Michael Carnes, Suzanne Carnes, Carnes Oil Corp., Carnes Texas, Ltd., Richard P. deCamara, and James S. Thigpen ("the Carnes Group"). EP filed a memorandum in opposition to the motion. [Doc. No. 72]. Pardee and the Carnes Group filed a reply memorandum in support of the motion. [Doc. No. 78]. For the following reasons, the motion is GRANTED.

### I.   ALLEGED FACTS AND PROCEDURAL BACKGROUND

This is a dispute over mineral servitudes. In 1971, the Pardee Company sold over 8,000 acres of non-contiguous tracts of property in Bienville Parish to Willamette Industries, Inc. ("Willamette"). Pardee, in the act of sale, reserved all of its mineral rights under the properties, thereby establishing a mineral servitude on each of the several tracts. [Doc. No. 1, Complaint, ¶¶ 9, 12]. One of the tracts contains approximately 1,260 acres and is at issue in this suit. *Id.* at ¶ 13.

Weyerhaeuser Co. ("Weyerhaeuser") is the successor to Willamette. *Id.* at ¶ 10. Weyerhaeuser contends that the Pardee mineral servitude was extinguished by the prescription of

nonuse in 1999. Despite this alleged extinguishment, Pardee granted a mineral lease on the land in January 2001 to Carnes Oil Corporation. Carnes assigned the lease to EP, which established units that affected the property and began to operate wells within those units. Wildhorse Resources, II LLC ("Wildhorse") took over EP's role as operator of the units in 2013.

On July 3, 2017, Weyerhaeuser filed a Complaint in this Court against Pardee, the Carnes Group, and Wildhorse, asserting that the lawsuit was brought pursuant to the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, and under state law, including LA. REV. STAT. § 30:10(A)(3) and the Louisiana Civil Code. In its Complaint, Weyerhaeuser seeks a declaration from the Court that the servitude was extinguished by the running of the prescription of nonuse on or before December 21, 1999, an award of damages for unpaid proceeds of production attributable to gas and oil production since that date, an award of damages for bad faith possession, damages for enrichment without cause, and other relief.

EP filed an answer in which it denied the servitude was extinguished. EP also filed cross claims against Pardee and the Carnes Group and prayed that, if Weyerhaeuser is successful, those Defendants be ordered to return all royalty payments that EP made to them.[1] EP alleges:

> 5.
> On January 23, 2001, Pardee Resources Group, Inc. (predecessor to Defendant-in-Cross Pardee) granted an Oil, Gas and Mineral Lease to Carnes Oil Corporation ("Carnes Lease"), wherein Pardee leased approximately 1,160 acres in Bienville Parish, Louisiana. Pardee's rights to grant the Carnes Lease derived from its status as a mineral servitude owner on the leased property.
>
> 6.
> Carnes Oil Corporation assigned all of its interests in the Carnes Lease to El Paso Production Company (predecessor to Plaintiff-in-Cross EP) by January 1, 2003.

---

[1]Those Defendants responded with cross-claims against EP, demanding an accounting for all royalties associated with the property and payment of any sums due. However, on April 17, 2018, the Court adopted the Report and Recommendation [Doc. No. 51] of the Magistrate Judge and dismissed those claims without prejudice. [Doc. No. 54].

7.

Following the assignment of the Carnes Lease, El Paso drilled a series of wells ("El Paso Wells") on the acreage covered by the Carnes Lease.

8.

When production of the El Paso Wells commenced, El Paso paid royalties to Pardee pursuant to the terms of the Carnes Lease. El Paso also paid royalties to the following overriding royalty interest owners in the Carnes Lease: Michael M. Carnes, Suzanne Carnes, Carnes Texas, Ltd., Carnes Oil, James Thigpen, and Richard P. DeCamara . . . El Paso, and **subsequently EP, continued to pay these royalties until EP sold its interests in the Carnes Lease to Wildhorse . . . in 2013.**

9.

Weyerhaeuser is a purported owner of a certain tract of land ("Weyerhaeuser Tract") over which the Carnes Lease was granted. Weyerhaeuser alleges that the mineral servitude rights owned by Pardee over the Weyerhaeuser Tract expired before Pardee granted the Carnes Lease, and therefore, the Carnes Lease was null from its inception.

10.

Based on these allegations (which EP denies), Weyerhaeuser is demanding all production proceeds obtained by EP from the El Paso Wells which is attributable to the minerals in, on, or under the Weyerhaeuser Tract. Some of these production proceeds were paid as royalties to Pardee and the [Carnes Group].

11.

If Weyerhaeuser is successful in proving that the Carnes Lease was null from its inception (which EP denies), **Pardee and [the Carnes Group] must return all royalty payments received under the Carnes Lease, which were attributable to the Weyerhaeuser Tract, as payment of a thing not owed pursuant to Louisiana Civil Code article 2299,** *et seq***.**

[Doc. No. 27 (emphasis added)]. Thus, if Weyerhaeuser is successful on its allegations that the Carnes lease is a nullity and EP must pay Weyerhaeuser for production from the tract, then EP contends that the Court should order Pardee and the Carnes Group to return to EP all royalty

payments they received under the lease that were attributable to the Weyerhaeuser tract. Doc. 27, ¶ 11.

Pardee and the Carnes Group now move the Court for judgment on the pleadings, contending that EP's cross claims are prescribed.

## II. LAW AND ANALYSIS

### A. Standard of Review

The standard for deciding a Rule 12(c) motion is the same as a Rule 12(b)(6) motion to dismiss. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). In determining whether dismissal is appropriate, the court must decide whether the facts alleged in the pleadings, if true, would entitle the plaintiff to a legal remedy. *Ramming v. United States*, 281 F.3d 158, 162 (5th Cir. 2001); *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir. 1994). When considering a Rule 12(c) motion, the Court must construe the allegations in the complaint in the light most favorable to the non-moving party, but conclusory allegations and unwarranted deductions of fact are not accepted as true. *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994). Judgment on the pleadings is appropriate only if there are no disputed issues of material fact and only questions of law remain. *Voest–Alpine Trading USA Corp. v. Bank of China*, 142 F.3d 887, 891 (5th Cir. 1998).

### B. Analysis

The facts are undisputed with regard to the cross claims. The parties agree that EP and its predecessor El Paso conducted drilling operations under the Carnes Lease and made royalty payments to Pardee and the Carnes Group until 2013. What remains is an issue of law: the applicable prescriptive period for EP's claim for the return of royalty payments to Pardee and the Carnes Group. Pardee and the Carnes Group argue that the three-year prescriptive period for

overpayment of royalties is applicable. EP argues that the ten-year prescriptive period for claims for payments for a thing not due under Louisiana Civil Code article 2299 is applicable.[2]

The Court turns to a review of EP's factual allegations. EP is the master of its Complaint, and, in this case, it has first argued that it engaged in drilling operations under a valid mineral servitude. However, in the alternative, if Weyerhaeuser prevails on its claims that the servitude was extinguished in 1999, EP has asserted claims against Pardee and the Carnes Group for return of "all royalty payments received under the Carnes Lease." [Doc. No. 27, p. 11]. EP admits that the last payments were made in 2013.

A royalty is defined as "any interest in production, or its value, from or attributable to land subject to a mineral lease, that is deliverable or payable to the lessor or others entitled to share therein. Such interests in production or its value are 'royalty[.]'" LA. REV. STAT. 31:213(5) Under Louisiana Civil Code article 3494(5), there is a three-year liberal prescriptive period for actions "to recover underpayments or overpayments of royalties from the production of minerals." Louisiana courts interpreting this article have made clear that a party cannot avoid the application of the prescriptive period by re-characterizing a claim for royalties as another type of claim. *See Griffin v. Amerada Petroleum Corp.*, No. 14-02998, 2017 WL 663253, at *4 n.4 (W.D. La. Feb. 17, 2017) ("Royalty owners cannot circumvent the three-year prescriptive period by characterizing their claims as 'breach of contract,' 'breach of implied obligations,' or some other type of claim that would otherwise be subject to a longer prescriptive period."); *Ellender v. Goldking Prod. Co.*, 1999-0069 (La. App. 1 Cir. 6/23/00); 775 So.2d 11, 15 ("A royalty claim does not change its identity based on its characterization.").

---

[2] Actions for payment of a thing not due are personal actions which prescribe ten years from the date of payment or ten years from the date that plaintiff knew or should have known of the overpayment. LA. CIV. C. ART. 3499.

EP's allegations are clear that, if the lease is declared invalid, it believes that it overpaid Pardee and the Carnes Group royalties. The three-year prescriptive period applies on the face of and under the plain language of those allegations in its Complaint. EP's argument that the payments were not "royalties" if the lease was null and void is contrary to and inconsistent with the allegations in its Complaint and contrary and inconsistent with the very nature of the payments. EP paid royalties, and it seeks repayment of those royalties. Recharacterizing the nature of the payments after the fact does not change the applicable prescriptive period. In the words of Shakespeare, "[a] rose by any other name would smell as sweet." *Romeo and Juliet*, Act II, Scene II, lines 43-44.

## III. CONCLUSION

For the foregoing reasons, the Motion for Judgment on the Pleadings is GRANTED, and EP's cross claims against Pardee and the Carnes Group are DISMISSED WITH PREJUDICE.

MONROE, LOUISIANA, this 28th day of June, 2018.

_____
TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE