UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| WEYERHAEUSER CO. | CIVIL ACTION NO. 17-cv-0856 |
| VERSUS | JUDGE DOUGHTY |
| PARDEE MINERALS, LLC, ET AL | MAGISTRATE JUDGE HORNSBY |

**REPORT AND RECOMMENDATION**

**Introduction**

Weyerhaeuser Company ("Weyerhaeuser") filed this action against several defendants seeking (1) a declaration that a mineral servitude on its land extinguished by non-use and (2) an award of damages based on mineral production from the land after the alleged expiration. It later filed an amended complaint that asserted a claim for damages and attorney's fees under La. R.S. 31:206 & 207 for failure to furnish a recordable act evidencing the expiration of a mineral right.

One of the defendants is EP Energy E&P Company, LP ("EP"), which formerly owned mineral interests that were dependent on the challenged servitude. Before the court is EP's Motion to Dismiss (Doc. 69) the claim brought against it under Sections 206 & 207. EP argues that (1) Weyerhaeuser did not make proper pre-suit demand, (2) the lease to EP was not extinguished within the meaning of the statutes, and (3) EP no longer owns mineral rights that it could release. For the reasons that follow, it is recommended that EP's motion be granted based on its third argument.

**Relevant Allegations**

In 1971, the Pardee Company sold over 8,000 acres of non-contiguous tracts of property in Bienville Parish to Willamette Industries, Inc. Pardee, in the act of sale, reserved all of its mineral rights under the properties, thereby establishing a mineral servitude on each of the several tracts. First Amended Complaint (Doc. 63) ¶¶ 9, 12. One of the tracts contains approximately 1,260 acres and is at issue in this suit. ¶ 13. Pardee Minerals, LLC is now the putative owner of the Pardee mineral servitude. ¶ 14.

Weyerhaeuser is the successor to Willamette so now owns the land at issue. ¶ 10. It challenges the current validity of the Pardee mineral servitude on its land. Weyerhaeuser contends that Louisiana law requires a mineral servitude be used within 10 years of its creation or any prior use, or it is extinguished. The servitude can be used and prescription interrupted by production of minerals, La. R.S. 31:36, or good faith operation for the discovery and production of minerals if the operations meet certain statutory requirements. La. R.S. 31:29. ¶¶ 15-16. There were drilling operations on the tract in past years, but Weyerhaeuser contends they did not result in the production of minerals or meet the requirements of the statute. ¶ 18. It asserts that the servitude prescribed by non-use and ended no later than December 21, 1999. ¶ 19.

Despite the alleged extinguishment of the Pardee Servitude in 1999, Pardee granted a mineral lease on the land in January 2001 to Carnes Oil Corporation. Carnes assigned the lease to EP, and EP later established units that affected the property and began to operate wells within those units. EP, in 2013, assigned its working interest in the Carnes Lease to Wildhorse Resources II, LLC, which took over EP's role as operator of the units.

¶¶ 20-23. The complaint named as defendants Pardee Minerals, LLC; EP; Carnes; Wildhorse; plus a number of companies and individuals who hold overriding royalty interests in the lease.

The original complaint included a demand that each defendant claiming an interest in the Pardee Mineral Servitude or the Carnes Lease furnish a recordable act evidencing the extinction or expiration of those interests in the land at issue.

**Analysis**

Weyerhaeuser's original complaint cited La. R.S. 31:206, which provides that "when a mineral right is extinguished by the accrual of liberative prescription, expiration of its term, or otherwise, the former owner shall, within thirty days after written demand by the person in whose favor the right has been extinguished or terminated, furnish him with a recordable act evidencing the extinction or expiration of the right." The complaint made a demand pursuant to Section 206 "requesting that each Defendant claiming a current interest in the Pardee Mineral Servitude and/or Carnes Lease furnish to Plaintiff a recordable act evidencing the extinction or expiration" of the servitude and the lease as to Weyerhauser's land. Doc. 1, ¶ 26. Weyerhauser's amended complaint, filed more than 30 days later, alleged that Weyerhaeuser had served the demand asserted in the original complaint on the defendants, but no defendant provided a recordable act of release. Doc. 63, ¶ 26.1-26.4

EP argues in its motion to dismiss that it was not obligated to provide such an act of release because, by the time demand was made, it no longer owned an interest in the Carnes Lease so was not "the former owner" who is obligated to provide a release under Section 206. The facts alleged in the complaint, as amended, are that the Pardee Servitude expired in 1999, but in 2001 Pardee granted the Carnes Lease to Carnes Oil, which assigned the lease to EP. EP assigned its working interest in the Carnes Lease to Wildhorse in 2013. Thus, EP never owned an interest in the Pardee Servitude, and it had no ownership interest in the Carnes Lease after 2013, which was four years before Weyerhauser made its demand for a recordable release.

Section 206 states that when a mineral right is extinguished by prescription "the former owner shall," within 30 days after demand, furnish a recordable act evidencing expiration of the right. Section 207 provides for an award of damages and attorney's fees for a violation of Section 206. It also applies to "the former owner of the extinguished or expired mineral right."

EP argues in its motion to dismiss that the statute does not apply to it because it never owned an interest in the Pardee Servitude, and it sold its interest in the Carnes Lease four years before Weyerhauser made its demand. EP contends that, by the time of demand, it had no rights left to release. Weyerhauser responds that Section 206 applies to *any* "former owner" of an extinct mineral right, not just the current owner or most recent owner before the right extinguished. It also argues that a Section 206 claim can be asserted against the representative of the putative owner and that EP is such a representative.

The undersigned is not persuaded by Weyerhauser's arguments. First, the statute does not apply to "any former owner." It refers only to "the former owner," which means *the* person or entity who claimed to own the right at the time of the alleged expiration. Had the legislature intended the statute to apply more broadly, it could have easily used language such as "all former owners" or "any former owner." Instead, the legislature used the singular term "the former owner." Louisiana courts have stated that Sections 206 and 207 "are penal in nature and must be strictly construed." Adams v. JPD Energy, Inc., 87 So. 3d 161, 164, (La. App. 2 Cir. 2012). The undersigned finds that a strict construction of the statutes makes them applicable to the owner of the mineral right at the time the right allegedly extinguished, but not applicable to that owner's predecessors in title who are no longer owners of the mineral right.

Weyerhauser also argues that a Section 206 claim may be asserted against not only the owner of the Pardee Servitude, but also the "representatives" of that owner, which it defines as the persons who actually exercised the mineral rights flowing from the servitude. That is said to include persons who own mineral leases flowing from the servitude. One problem with that approach is that EP has not held any such lease rights since it assigned its rights to Wildhorse four years before suit was filed.

Another obstacle to the argument is that, after this motion was briefed, the Supreme Court of Louisiana issued Gloria's Ranch, LLC v. Tauren Exploration, Inc. ___ So.3d ____, 2018 WL 3216497 (La. 6/27/2018), which addressed who is an "owner" for purposes of Sections 206 and 207. The landowner in that case sued mineral lessees and Wells Fargo, which was a creditor of one of the lessees and held a security interest in the mineral lease.

The Court held that Wells Fargo could not be considered an "owner" of the lease based on its status. Wells Fargo had a mere security interest, not a true assignment, and the lessee still maintained the working interest in the property. Wells Fargo did have certain rights over the lessee's right to conduct operations on the property, but the Court held that it was error to determine that those rights incidental to the mortgage rose to the level of ownership of the mineral lease. Wells Fargo had a mortgage affecting the mineral lease, as well as a net profits interest and an overriding royalty interest, but those accessory and derivative rights did not amount to rights of ownership that would make Wells Fargo a "former owner" under Sections 206 and 207.

Wells Fargo had a considerably stronger connection to the lease in Gloria's Ranch than EP has/had to the Pardee Servitude or Carnes Lease in this case. At the time demand was made on EP, the company held zero interest in the lease or servitude, so it had no authority to make decisions about whether those rights should be deemed extinguished or released. It is debatable what benefit a person in Weyerhauser's position would obtain by getting a release from distant former owners, but it is almost certain such releases would cause unwarranted headaches for title examiners and the most recent owner of the mineral right.

Mineral leases and servitudes may continue in effect for decades, and the conveyance records often contain multiple assignments over the course of those years from one company or individual to another. The undersigned does not believe that the legislature contemplated that all of those former owners—many of whom may be dead, out of business, or no longer doing business in Louisiana—should be subjected to penalties for

failure to release a mineral right that is owned by someone else and that they no longer own or have any interest in. Those former owners may be also be far removed from the situation and have no idea whether current production or other activity on the property maintain a lease or servitude in effect. But "*the* former owner" as referenced in the statutes will be in a position to make that assessment and determine whether it should issue a recordable act that releases its rights.

The Gloria's Ranch decision does not address this specific situation, but its strict assessment of who is an owner within the meaning of the statutes is consistent with this approach. Weyerhauser has not cited any decisions in which a former owner, who no longer claims any current interest in the lease or servitude at issue, has been subjected to liability under Sections 206 and 207 for failing to release its former rights. The undersigned finds that the statutes do not apply to such former owners.

Accordingly,

It is recommended that EP's Motion to Dismiss (Doc. 69) be granted by dismissing all claims against EP Energy E & P Company, LP brought against it under La. R.S. 31:206 & 207.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 2nd day of October, 2018.

*Mark L. Hornsby*
U.S. Magistrate Judge